Scott D. Stein (admitted *pro hac vice*)
sstein@sidley.com
Joseph R. LoCascio (admitted *pro hac vice*)
joseph.locascio@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: +1 312 853 7520
Facsimile: +1 312 853 7036

Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com
Benjamin Gillig (SBN 327873)
bgillig@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

*Attorneys for Defendant McKesson Corporation*
(Additional counsel listed on signature page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

UNITED STATES OF AMERICA, ex rel. CARL KELLEY and MICHAEL MCELLIGOTT,

Plaintiffs,

vs.

MCKESSON CORPORATION, a Delaware Corporation,

Defendant.

Case No. CV19-2233-DMR

**JOINT CASE MANAGEMENT STATEMENT**

Assigned to: Hon. Donna M. Ryu

The parties to the above-entitled action jointly submit this Joint Case Management Statement pursuant to the Court's notice setting the Initial Case Management Conference for December 10, 2020 (ECF No. 70).

**1. Jurisdiction and Service**

**Relators' Position:**

Plaintiff United States of America ex rel. Carl Kelley ("Kelley") and Michael McElligott ("McElligott") allege that Defendant McKesson Corporation violated and is violating the False Claims Act, codified at 31 U.S.C. §3729. Consequently, this Court has federal question jurisdiction pursuant to 21 U.S.C. §1331 because this action is a case or controversy under Article III of the United States Constitution that arises under 31 U.S.C. §§3730 and 3732. Kelley and McElligott have served McKesson.

**McKesson's Position:**

McKesson does not dispute service. McKesson reserves all rights to assert the first-to-file bar and other bases for dismissal of Relators' claims.

**2. Facts**

**Relators' Position:**

Kelley worked at McKesson from 2001 until 2017, including as a senior IT Distribution manager from 2006 to 2017 where he supervise a team of information technology specialists who supported servers, workstations, customer and employee interaction at 35 McKesson Distribution Centers ("DCs") located throughout the United States. McElligott worked for McKesson from 1999 to 2009, including providing personal security for John Hammergren, McKesson's Chief Executive Officer at the time.

McKesson distributes an immense volume of medication, including Schedule II opiates, through its 35 DCs. McKesson's executive management has long known of significant security flaws in its DCs which allow for the easy theft of products in the supply chain, including Schedule II opiates. McKesson has a long history of failing to ensure that the Schedule II opiates that pass through its DCs are not diverted for unlawful use. In 2008 and again in 2017, McKesson entered into

settlement agreements with the United States Department of Justice ("DOJ") and United States Drug Enforcement Agency ("DEA") regarding McKesson's failure to prevent the diversion of opiates, particularly by failing to identify and report suspicious opioid orders but instead simply filling those orders. At the time McKesson entered into both the 2008 and 2017 settlement agreements, McKesson' executive management was aware of numerous flaws in security at its DCs which allowed for the diversion of opiates by means other than filling suspicious opioid orders, but McKesson intentionally concealed those security lapses from the DOJ and DEA. Most of these security flaws continue to the present. Opportunities to divert opioids and high value drugs existed at the truck loading dock, before drugs are scanned into the DC inventory and while drugs are stored before distribution to McKesson customers.

While intentionally concealing known security flaws at the DCs that violate federal laws related to control and diversion of controlled substances and instead misrepresenting its efforts to prevent theft of Schedule II opiates, McKesson submitted and continues to submit false or fraudulent claims for payment or approval under various federal programs asserting compliance with federal laws relating to controlled substances, including but not limited to the Medicare program (42 U.S.C. §§1395 et. seq.). Other relevant federal programs impacted by McKesson's violation of the False Claims Act include: (i) TRICARE, a health care program administered by the United State Department of Defense (10 U.S.C. §§1071 et seq.); (ii) CHAMPVA, a health care program administered by the United States Department of Veteran Affairs (38 U.S.C. §§1781 et seq.); and (iii) FEHBP (Federal Employee Health Benefit Program), a health insurance program administered by the United States Office of Personnel Management (5 U.S.C. §§8901 et seq.).

**McKesson's Position:**

McKesson disputes Relators' characterization of the facts. McKesson is one of the nation's largest distributors of pharmaceuticals in the United States. Opioids are one of the classes of drugs that McKesson distributes. McKesson maintains robust programs designed to detect and prevent opioid diversion. Relators' operative complaint fails to set out any violation of statute, regulation, or contract with the requisite particularity. Nor does it adequately allege that any claim for payment was made in connection with such a purported violation. Relators' allegations cannot support a

finding of FCA violations.

**3. Legal Issues**

**Relators' Position:**

Under the "implied false certification theory," a violation of the False Claims Act occurs when "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements … if they render the defendant's representations misleading with respect to the goods or services provided." (See, e.g., Universal Health Servs. v. United States ex rel. Escobar, ___U.S.___, 136 S.Ct. 1989, 1999, 195 L.Ed.2d 348, 361 (2016) (emphasis added).) McKesson violated the False Claims Act, codified at 31 U.S.C. §§3729 et seq., by: (i) knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval (31 U.S.C. §3729(a)(1)(A)); (ii) knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim (31 U.S.C. §3729(a)(1)(B)); and/or (iii) conspiring to commit a violation of 31 U.S.C. §3729(a) (31 U.S.C. §3729(a)(1)(C)), through, inter alia, omitting its violations of statutory, regulatory, and contractual requirements.

McKesson's claims, records or statement are and were false or fraudulent because McKesson has failed and continues to fail to disclose to the federal government that McKesson is not operating its DCs in compliance with the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§801 et. seq. ("CSA"), and the regulations promulgated thereunder, 21 C.F.R. Part 1300 et seq. Such noncompliance renders McKesson's representations in its claims misleading because such noncompliance would disqualify McKesson from operating and receiving payment or approval from the aforementioned federal programs. For example, McKesson has violated various CSA regulations, including but not limited to: (i) 21 C.F.R. §1301.71(a) by failing to "provide effective controls and procedures to guard against theft and diversion of controlled substances;" (ii) 21 C.F.R. §1301.72 (d) by failing to limit access to controlled substance storage areas "to an absolute minimum number of specifically authorized employees;" (iii) 21 C.F.R. §1301.74(c) by failing to notify the DEA "in writing, of any theft or significant loss of any controlled substances within one business day of discovery of the theft or loss;" and (iv) 21 C.F.R. §1301.77(b) by failing to limit access to controlled

substances "to an absolute minimum number of specifically authorized employees." McKesson has also failed to maintain a proper inventory that is a "complete and accurate record of all controlled substances on had on the date the inventory is taken," as required by 21 C.F.R. §1304.11(a) and (e).

**McKesson's Position:**

McKesson disputes Relators' characterization of the legal issues. As detailed in McKesson's motion to dismiss, Relators ignore that the False Claims Act ("FCA") is not "a vehicle for punishing garden-variety . . . regulatory violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). Relators' allegations cannot survive scrutiny under Rules 9(b) and 12(b)(6) because (1) Relators rely on laws and regulations that supply no bright-line rules and thus cannot serve as predicates for an FCA violation; (2) Relators have not adequately pleaded that McKesson ever violated any of the authorities they cite; (3) Relators have not adequately alleged that McKesson made any claim in connection with a false statement; (4) Relators allege no facts supporting a finding of materiality; and (5), at minimum, Relator Kelley's claims must be dismissed under FCA's first-to-file bar. (*See generally* ECF Nos. 69, 75.)

**4. <u>Motions</u>**

McKesson filed a motion to dismiss on March 13, 2020 (ECF No. 40), Relators opposed (ECF No. 45), and McKesson filed a reply in support (ECF No. 50). The Court granted McKesson's motion to dismiss on August 18, 2020 (ECF No. 63). Relators filed a Second Amended Complaint on November 8, 2020 (ECF No. 65), which McKesson moved to dismiss (ECF No. 69). Relators opposed McKesson's motion to dismiss (ECF No. 73), and McKesson filed a reply in support of the motion (ECF No. 75).

The motion to dismiss Relators' Second Amended Complaint is currently pending before the Court.

**5. <u>Amendment of Pleadings</u>**

**Relators' Position:**

Kelley and McElligott do not anticipate seeking to amend the Second Amended Complaint.

**McKesson's Position:**

McKesson has requested that the Second Amended Complaint be dismissed without leave to amend (ECF Nos. 69, 75).

**6. Evidence Preservation**

**Relators' Position:**

Kelley and McElligott have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties will meet and confer pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**McKesson's Position:**

McKesson has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties will meet and confer pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7. Disclosures**

**Relators' Position:**

Kelley and McElligott have made a full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 that discloses: (i) the identity of persons likely to have discoverable information with a description of that information (other than impeachment witnesses); (ii) the categories and locations of documents or ESI in their possession, custody or control that support the claim against McKesson (other than impeachment evidence); and (iv) that they have no applicable insurance agreement.

**McKesson's Position:**

McKesson requests that initial disclosures not be due until and unless McKesson is required to answer.

**8. Discovery**

**Relators' Position:**

Kelley and McElligott have not propounded discovery. The parties have agreed, subject to the Court's approval, that they will refrain from conducting discovery until after the Court rules on McKesson's anticipated Rule 12(b)(6) motion. Kelly and McElligott anticipate serving document requests, interrogatories and requests for admission, as well as deposing persons most knowledgeable at McKesson regarding security and the lack thereof at McKesson's DCs and McKesson's sale of Schedule II opiates to the federal government or under federally funded programs. In addition, they anticipate deposing present and former employees of McKesson with knowledge regard the lack of security. Kelley and McElligott are willing to consider a stipulated e-discovery order and will develop a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f). They are not aware of any discovery disputes at this time.

**McKesson's Position:**

McKesson agrees that discovery should not begin until after the Court rules on McKesson's motion to dismiss. If discovery goes forward, McKesson will take discovery regarding, among other things, Relators' allegations and their basis for the same. If this case and the state case both survive motions to dismiss, McKesson may file motions seeking to coordinate discovery in the two matters.

**9. Class Actions**

Not applicable.

**10. Related Cases**

Kelley and McElligott filed an action under the California False Claims Act, which is currently pending in San Francisco County Superior Court: *State of California ex rel. Carl Kelley and Michael McElligott*, Case No. CGC-19-576931.

**11. Relief**

**Relators' Position:**

Kelley and McElligott seek treble damages pursuant to 31 U.S.C. §3729(a)(1) or other applicable law in an amount to be proven at trial; penalties pursuant to 31 U.S.C. §3729(a)(1) or other applicable law; and For attorney fees and costs pursuant to 31 U.S.C. §3729(a)(3) or other applicable law. The amount of damages is currently unknown and will be the subject of discovery. Bases for calculating damages include disgorgement of ill-gotten profits and consequential damages for the cost to the federal government of treatment of opioid addiction.

**McKesson's Position:**

McKesson denies that Relators are entitled to any relief.

**12. Settlement and ADR**

**Plaintiffs'/Relators' Position:**

No ADR has occurred to date. As required by ADR L.R. 3-5, the parties have met and conferred regarding ADR and agreed that private mediation is the best ADR option. The parties further agree that such a mediation would not be appropriate until after the Court rules on McKesson's Rule 12(b)(6) motion and some discovery is completed. The prospects of a successful mediation or other ADR process will be improved by discovery to or informal disclosure by McKesson regarding the amount of Schedule II opioids stolen from McKesson's DCs and the revenue and profit earned by McKesson from the sale of Schedule II opioids to the federal government or under federally-funded programs.

**McKesson's Position:**

McKesson agrees that mediation would not be productive until after the Court rules on McKesson's motion to dismiss. McKesson does not believe that any discovery is appropriate at this time, and McKesson disputes Relators' presumption of opioid theft set forth above.

**13. Consent to Magistrate Judge For All Purposes**

The parties have consented to the Honorable Magistrate Judge Donna M. Ryu for all

purposes.

**14. Other References**

The parties do not believe this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues**

**Relators' Position:**

Kelley and McElligott are not aware of any issues which can be narrowed at this early stage in the litigation. Resolution of the issue of liability prior to a consideration of damages, either by dispositive motion or bifurcation at trial, may expedite resolution.

**McKesson's Position:**

McKesson believes that the case should be dismissed in its entirety. McKesson is not aware of any further narrowing at this early stage.

**16. Expedited Trial Procedure**

The parties do not believe this case is amenable to the Expedited Trial Procedure.

**17. Scheduling**

The Parties have met and conferred and agree, subject to the Court's approval, that the Court should set a further CMC after the Court decides McKesson's motion to dismiss. At that time, the parties would propose a schedule.

**18. Trial**

**Relators' Position:**

Kelley and McElligott anticipate a 10-day jury trial.

**McKesson's Position:**

McKesson anticipates a 8-14 day jury trial.

**19. <u>Disclosure of Non-party Interested Entities or Persons</u>**

**Relators' Position:**

Kelley and McElligott have filed a Certification of Interested Entities or Persons as required by Civil Local Rule 3-15 that they are not aware of any person or entity who has: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**McKesson's Position:**

McKesson is not aware of any person or entity who has: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding, except for institutional shareholders who currently hold less than 10% of McKesson's stock.

**20. <u>Professional Conduct</u>**

All attorneys have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. <u>Other</u>**

The parties are not presently aware of any other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

DATED: December 3, 2020

By: <u>/s/ Scott D. Stein</u>

Scott D. Stein (admitted *pro hac vice*)
sstein@sidley.com
Joseph R. LoCascio (admitted *pro hac vice*)
joseph.locascio@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: +1 312 853 7520
Facsimile: +1 312 853 7036

Jaime A. Bartlett (SBN 251825)
jbartlett@sidley.com

Benjamin Gillig (SBN 327873)
bgillig@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

*Attorneys for Defendant McKesson Corporation*

By: /s/ Robert D. Sanford

James A. Quadra (SBN 131084)
jquadra@quadracoll.com
Rebecca Coll (SBN 184468)
rcoll@quadracoll.com
Robert D. Sanford (SBN 129790)
rsanford@quadracoll.com
QUADRA & COLL LLP
649 Mission Street San Francisco, CA 94105
Telephone: +1 415 426 3502
Facsimile: +1 415 625 9936

*Attorneys for Relators Carl Kelley and Michael McElligott*

## SIGNATURE ATTESTATION

I am the ECF user whose identification and password are being used to file the foregoing Statement. In compliance with Civil Local Rule 5.1(i)(3), I hereby attest that the signatory has concurred in this filing.

/s/ Scott D. Stein

Scott D. Stein