UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br> v. <br> MCKESSON CORPORATION, <br> Defendant. | Case No. 19-cv-02233-DMR <br><br> **ORDER ON DEFENDANT'S SECOND MOTION TO DISMISS** <br> Re: Dkt. No. 69 |

Qui tam plaintiffs and relators Carl Kelley and Michael McElligott filed this action on behalf of the United States against Defendant McKesson Corporation ("McKesson"), alleging a claim for violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.[1] The court previously granted McKesson's motion to dismiss the first amended complaint. [Docket No. 63.] Relators filed a second amended complaint on September 8, 2020. [Docket No. 65 ("SAC").] McKesson moves to dismiss the SAC. [Docket Nos. 69 ("Mot."), 75 ("Reply").] Relators oppose. [Docket No. 73 ("Opp.").] The court held a hearing on December 10, 2020.

For the reasons stated below, the motion is granted.

**I.    BACKGROUND**

The court described the central allegations in its order granting McKesson's first motion to dismiss, so they are not repeated here. *See* Docket No. 63. Relevant to this motion, Relators allege that McKesson "engage[s] in extensive business with the federal government," including through its service as the "prime pharmaceutical supplier for the United States Department of Veterans Affairs" ("VA"). SAC ¶¶ 11-12. Relators attached a copy of McKesson's contract with the VA to

---

[1] The original complaint was brought only by McElligott. [Docket No. 1.] Kelly was added as a co-Relator by way of the first amended complaint, which Relators filed before McKesson appeared in the action. [Docket No. 11.]

their complaint. SAC, Ex. A, Pharmaceutical Prime Vendor Contract ("VA PPV"). The VA PPV requires McKesson "to comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance" under the contract. VA PPV § 52.212-4(q), p. 76. Relators allege that McKesson is subject to similar contractual obligations under other federal programs, such as Medicare, TRICARE, CHAMPVA, and FEHBP, although contracts related to those other programs are not attached to the SAC. SAC ¶ 18.

According to Relators, McKesson submitted claims for payment under the VA PPV and other federal programs while failing to disclose its noncompliance with the terms of the governing contracts. Specifically, the SAC lays out extensive allegations regarding McKesson's violations of federal and state laws and regulations that govern the distribution of pharmaceuticals, including Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("CSA"), 21 U.S.C. §§ 801 *et seq.*; the Drug Supply Chain Security Act, 21 U.S.C. §§ 360eee *et seq.*; the Federal Acquisition Regulations; and California's Uniform Controlled Substances Act, California Health & Safety ("H&S") Code §§ 11000 *et seq.* SAC ¶¶ 21-51. Relators allege that by submitting claims for payment under contracts that require compliance with "all applicable" laws and regulations, McKesson falsely represented to the federal government that it is compliant with those authorities.

Relators bring a single claim under the FCA.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**B.    Rule 9(b)**

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In addition to meeting the plausibility standard of Rule 8(a), an FCA claim must be pled with particularity under Rule 9(b)'s heightened pleading standard. *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) (explaining that FCA claims implicate Rule 9(b) because they involve allegations of fraud). To satisfy the Rule 9(b) standard, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (citation and alterations omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done

3

anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citation omitted).

### III. DISCUSSION

The FCA is the "primary litigative tool for the recovery of losses sustained as the result of fraud against the government." *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). Section 3729 imposes liability for various fraudulent actions. Relators' claim arises under subsection 3729(a)(1)(A), which imposes liability against anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," and subsection 3729(a)(1)(B), which prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim."[2] To prevail on an FCA claim under either provision, a plaintiff must show "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).

McKesson moves to dismiss the SAC on the grounds that Relators have not adequately alleged that (1) McKesson made false statements about its compliance with federal and state authorities; (2) McKesson submitted any claims for payment to the U.S. government; and (3) the alleged false statements were material to the government's payment of any claim. McKesson also argues that the court should dismiss Kelly and his claims under the FCA's first-to-file bar. As explained below, the court finds that Relators fail to adequately allege that McKesson submitted false claims for payment to the federal government. Accordingly, it is not necessary to reach the remaining arguments.

An FCA claim can proceed under either an express or implied false certification theory. Express false certification occurs when "the entity seeking payment certifies compliance with a law,

---

[2] The SAC also alludes to subsections 3729(a)(1)(C) and (G). *See* SAC ¶ 53. However, there are no factual allegations relating to conspiracy under subsection 3729(a)(1)(C) or fraudulently avoiding obligations to pay the government under subsection 3729(a)(1)(G). At the hearing, Relators confirmed that they are not pursuing claims under those subsections. [Docket No. 81, Transcript of December 10, 2020 Hearing ("Tr.") at 2:19-3:2.]

4

rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). By contrast, an implied false certification theory is appropriate "when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* "The key difference between the two is whether the entity seeking payment must certify that it has complied with the applicable law, rule, or regulation each time a claim is made, or if that certification is made initially and later implied with each subsequent claim." *United States ex rel. Armstrong-Young v. Carelink Hospice Servs., Inc.*, Case No. 15-cv-04095-WHO, 2018 WL 4773111, at *2 (N.D. Cal. Oct. 1, 2018).

Relators assert that their claim succeeds under either an express or implied false certification theory. Opp. at 3.

### A. Express False Certification

Relators plead their theory of liability as follows. McKesson entered into contracts with the federal government. Although those contracts require it to comply with all federal and state laws and regulations that govern the distribution of pharmaceuticals, McKesson is not compliant. McKesson nevertheless submitted claims for payment for pharmaceuticals pursuant to those contracts while failing to disclose its noncompliance. *See* SAC ¶¶ 12-17; Opp. at 3.

The SAC does not contain any allegations that McKesson expressly certifies its compliance with the applicable authorities each time it submits a claim for payment under the various contracts. At the hearing, Relators argued that because the VA PPV contract requires McKesson to comply with all applicable laws and regulations, it can be inferred that McKesson expressly certifies its compliance each time it submits a claim. *See* VA PPV § 52.212-4(q), p. 76; *see also* Tr. at 6:1-20. This argument is not convincing. Requiring compliance as part of a contractual agreement is not the same as requiring express certification of compliance each time a claim is made.

Relators also argued that they should be permitted to allege an express certification theory and then conduct discovery to attempt to support that allegation. Tr. at 3:23-4:11. Not so. Although Relators are not required to prove their allegations at the pleading stage, they must still allege a

5

sufficient factual basis for their legal theories. *See* Fed. R. Civ. P. 11. Relators' assertion that discovery "may" reveal claims with express certifications is purely hypothetical and not supported by the allegations in the SAC.

For these reasons, Relators have not adequately pleaded an express false certification theory.

### B. Implied False Certification

The U.S. Supreme Court examined the implied false certification theory in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). In *Escobar*, a teenager had been treated at a mental health facility by various healthcare providers who were not properly licensed in conformance with Medicaid requirements. 136 S. Ct. at 1997-98. After the teenager suffered an adverse reaction to a medication and died from a seizure, her family members sued United Health Services ("UHS"), the parent company of the facility. They alleged that UHS, through the facility, "submitted reimbursement claims that made representations about the specific services provided by specific types of professionals, but that failed to disclose serious violations of regulations pertaining to staff qualifications and licensing requirements for these services." *Id.* at 1997–98. For example, the facility submitted reimbursement claims using payment codes corresponding to various services, such as "Individual Therapy" and "family therapy." *Id.* at 1197. However, the staff who provided those services were not qualified to do so. They "misrepresented their qualifications and licensing status to the Federal Government to obtain individual National Provider Identification numbers, which are submitted in connection with Medicaid reimbursement claims and correspond to specific job titles," even though they did not have the credentials required for those positions. *Id.* Relying on an implied false certification theory, the relators argued that UHS's reimbursement claims were actionable under the FCA because "every submission of a claim for payment implicitly represents that the claimant is legally entitled to payment, and that failing to disclose violations of material legal requirements renders the claim misleading." *Id.* at 1999-2000.

The Supreme Court held in favor of the relators, but on more narrow grounds. It did not decide "whether all claims for payment implicitly represent that the billing party is legally entitled to payment." *See Escobar*, 136 S. Ct. at 2000. Instead, the Court determined that the reimbursement claims at issue "[did] more than demand payment"; they also represented that UHS had provided

specific services (individual therapy, family therapy, etc.) by staff with specific job titles. *Id.* Those representations misleadingly implied that qualifying services had been provided by licensed staff members. *See id.* The Court accordingly held that an implied certification theory can be a basis for FCA liability, "at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Id.* at 2001.

The Ninth Circuit has held that FCA relators must satisfy both of *Escobar*'s conditions to prove falsity under an implied certification theory. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018) ("[O]ur post-*Escobar* cases . . . appear to *require Escobar*'s two conditions . . . ." (emphasis in original)); *Campie*, 862 F.3d at 901 ("The Supreme Court held that although the implied certification theory can be a basis for liability, two conditions *must* be satisfied." (emphasis added)).[3] Here, McKesson argues that Relators do not meet the two *Escobar* requirements because they fail to identify any claims that "mak[e] specific representations about the goods or services provided" such that McKesson's alleged legal violations render such representations "misleading half-truths."[4] *See* 136 S. Ct. at 2001. The court agrees.

The requirements for establishing an implied certification theory are illustrated by several post-*Escobar* cases. In *Rose*, the Ninth Circuit examined the Department of Education's ("DOE") incentive compensation ban, which prohibited schools that receive certain federal funds from "rewarding admissions officers for enrolling higher numbers of students." *Rose*, 909 F.3d at 1016.

---

[3] *Rose* expressed doubt that *Escobar* required all implied false certification claims to meet the two conditions that the Court found were sufficient in that case. 909 F.3d at 1018. ("The Court did not state that its two conditions were the *only* way to establish liability under an implied false certification theory." (emphasis in original)). But *Rose* recognized that *Campie* and *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017) made *Escobar*'s two conditions mandatory in this Circuit. *Id.* ("We are bound by three-judge panel opinions of this court. We conclude, therefore, that Relators must satisfy *Escobar*'s two conditions to prove falsity, unless and until our court, en banc, interprets differently." (internal citation omitted)).

[4] At the hearing, McKesson further distinguished *Escobar* because the health providers in that case represented that they were licensed to perform services for which they submitted claims even though they were not in fact licensed. By contrast, it is undisputed that McKesson is licensed to distribute drugs. Thus, McKesson's claims for payment do not misrepresent McKesson's licensure status. This distinction further illustrates that Relators' theory is more attenuated than the theories found to be sufficient in *Escobar* and subsequent cases.

The defendant university awarded salary increases to admissions officers based on their enrollment numbers, in violation of the DOE incentive compensation ban. *Id.* at 1016. The university then submitted Federal Stafford Loan School Certification forms on behalf of student borrowers, which represented that the students were "eligible borrowers" who had been "accepted for enrollment in an eligible program." *Id.* at 1018. The court recognized that a reasonable trier of fact could determine that the representation of eligibility was misleading, because the university "failed to disclose its noncompliance with the incentive compensation ban." *Id.* In other words, reasonable jurors could decide that the university's "eligible borrower" certification was misleading because the students were actually enrolled in an ineligible program. *Id.* The court thus held that a triable issue of fact existed as to whether the university made false claims in order to receive payment from the DOE.

Similarly, in *Campie*, the defendant drug manufacturer sourced drug ingredients from facilities that had not been approved by the FDA. 862 F.3d at 895-96. The manufacturer then used the non-approved ingredients to manufacture and sell pharmaceuticals to the federal government through various programs—under which payment for drugs was contingent on FDA approval—and submitted claim forms requesting payment for the drugs Truvada, Emtriva, and Atripla. *Id.* at 897. The Ninth Circuit determined that the drug names "necessarily refer to specific drugs under the FDA's regulatory regime." *Id.* at 902-03. For that reason, the claims for payment for "FDA approved" drugs misleadingly implied that the pharmaceuticals sold to the government complied with the FDA requirements for those specific drugs. *See id.* at 902-03. Accordingly, the court determined that the relators adequately alleged "specific representations about the goods or services provided." *Id.* at 902.

By contrast, in *Kelly*, the Ninth Circuit found that the relator failed to identify specific false representations sufficient to sustain an implied false certification theory. *See* 846 F.3d at 332. In that case, the relators alleged that a government contractor submitted monthly cost reports that were not compliant with the federal standards for such reports. *Id.* at 329, 332. The defendant also submitted public vouchers (claims for payment pursuant to cost-reimbursement contracts) on U.S. Standard Form 1034 that "contained a single express certification that the services listed in them

8

were performed during the time periods stated." *Id.* at 332. The Ninth Circuit held that even if the defendant's cost reports were in fact not compliant with the applicable standards, and even if such compliance were a condition of payment, the relator's claim failed. *Id.* This is because the vouchers did not make any specific representations about the defendant's performance but instead merely reported the period of performance. *Id.* As there was no evidence that the defendant failed to complete the work within the relevant time period, the claims did not contain false or inaccurate statements. *Id.* at 332-33. The court accordingly affirmed the district court's order granting summary judgment to the defendant.

Thus, *Escobar* and subsequent Ninth Circuit cases make clear that to succeed on an implied false certification theory, qui tam relators must allege that a defendant submitted claims that made "specific representations about the goods or services provided." 136 S. Ct. at 2001; *see Rose*, 909 F.3d at 1018; *Campie*, 862 F.3d at 902-04. In addition, *Kelly* emphasizes that the representations must be made in a claim for payment. *See Kelly*, 846 F.3d at 333; *see also Hendow*, 461 F.3d at 1173 ("[F]or a false statement or course of action to be actionable under the false certification theory of false claims liability, it is necessary that it involve an actual *claim* . . . ." (emphasis in original)); *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("[A]n actual false claim is the *sine qua non* of a[n FCA] violation." (internal quotation marks and citation omitted, alterations in original)). Thus, it is not sufficient to allege that claims for payment occurred against the backdrop of "underlying fraudulent activity," "the government's wrongful payment," or "a menacing underlying scheme." *Kelly*, 846 F.3d at 333.

In the present case, Relators' theory of liability is that "(1) McKesson explicitly undertook to comply with the CSA and its regulations, (2) claims were submitted, and (3) McKesson was not in compliance with the CSA and its regulations." Opp. at 19-20. According to Relators, this course of conduct constitutes specific representations by McKesson that "the Schedule II drugs sold to federal governmental agencies or under federally-funded programs are delivered via a supply chain that complies with the CSA." *Id.* at 19. Under the authority examined above, these allegations are not sufficient. Relators do not identify any specific claims for payment McKesson made pursuant to its government contracts, nor does it describe what forms McKesson used for those claims and

the language contained on those forms.  This is different from *Rose*, where the relators alleged specific misleading language ("eligible borrower" and "eligible program") on a specific claim (the Federal Stafford Loan School Certification form).  *See* 909 F.3d at 1018.  It is also different from *Campie*, where the relators identified claim forms containing drug names (Truvada, Emtriva, and Atripla) that "necessarily refer to specific drugs under the FDA's regulatory regime."  *See* 862 F.3d at 897, 902-03.  At most, Relators allege that any claims submitted by McKesson necessarily misrepresent compliance with the applicable legal or contractual requirements.  That theory has been soundly rejected by post-*Escobar* Ninth Circuit authority.  *See Rose*, 909 F.3d at 1017-18.

Relators argue that they are not required to identify "actual examples of submitted false claims."  Opp. at 19 (quoting *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019)).  Relators are correct that "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Id.* (quoting *Ebeid*, 616 F.3d at 998-99 (internal quotation marks omitted)).  However, the cited cases do not release Relators from their obligation to identify a defendant's specific representations made in relation to claims.  For example, in *Godecke*, the relators alleged that the defendant used the wrong billing code modifiers in submitting claims for payment to Medicare in order to conceal that the claims were not actually eligible for reimbursement.  937 F.3d at 1207.  The relator in that case never personally entered the wrong billing code on a claim or directly observed other employees doing so.  *Id.* at 1209.  Nevertheless, she alleged particular details of the scheme to submit claims with the wrong billing code, including her own detailed analysis that cross-referenced claims that were not eligible for payment with claims that had been paid.  *See id.* at 1207-08.  The Ninth Circuit found that the relator adequately alleged that false claims had been submitted even though she had not personally witnessed the submission of a false claim.  *Id.* at 1209-1210.  In other words, while relators need not identify specific *claims* that were actually submitted, they must still identify specific *representations made in connection with claims* along with "reliable indicia" that some claims were actually submitted.  Here, Relators do not explain how McKesson submitted claims, what specific representations it made in connection with those claims, or how those representations were misleading or false.

10

In sum, Relators' allegations assert that McKesson is in breach of various federal contracts, in violation of numerous laws and regulations, and in receipt of money to which it is not legally entitled. However, FCA liability attaches not to "underlying fraudulent activity" or "a menacing underlying scheme," but to claims for payment. *Kelly*, 846 F.3d at 333; *see also U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265-66 (9th Cir. 1996) (agreeing with the district court that FCA claims cannot be premised merely on "any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money . . . ."). As explained above, Relators have not adequately pleaded that McKesson submitted false claims for payment to the government.

Accordingly, the court finds that Relators have not stated a claim under the FCA.

## IV. CONCLUSION

For the reasons stated above, McKesson's motion to dismiss is granted. The SAC is dismissed with prejudice. The clerk shall enter judgment for McKesson and against Relators and close this case.

**IT IS SO ORDERED.**

Dated: February 16, 2021



_____
Donna M. Ryu
United States Magistrate Judge